NOT DESIGNATED FOR PUBLICATION

No. 126,344

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

BRANDON JOSEPH PERRY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; ERICA K. SCHOENIG, judge. Submitted without oral argument. Opinion filed March 29, 2024. Reversed and remanded with directions.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*John A. DeMarco*, of Fairbanks DeMarco, LLC, of Overland Park, for appellee.

Before SCHROEDER, P.J., ISHERWOOD and PICKERING, JJ.

PER CURIAM: The State charged Brandon Joseph Perry with multiple crimes based on his alleged actions with the victim, K.E. Prior to trial, and because of K.E.'s refusal to appear at any of the proceedings, the State moved to admit the testimony of the forensic nurse who examined K.E. when she went to the emergency room. At a hearing requested by the State, the district court found all the forensic nurse's testimony was inadmissible as violative of the Confrontation Clause of the Sixth Amendment to the United States Constitution. The State filed this interlocutory appeal, challenging the

district court's denial of the nurse's testimony as inadmissible hearsay. For the reasons explained below, we reverse and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

On August 9, 2021, the State charged Perry with one count of aggravated burglary, one count of aggravated sexual battery, and one count of aggravated domestic battery in relation to alleged events between Perry and K.E., his ex-girlfriend, several days before. According to an affidavit written by a law enforcement officer, K.E. alleged Perry broke into her home and attacked her while she was sleeping. The specific facts of the event are not required for us to resolve the issue presented in the State's interlocutory appeal.

Sometime shortly after the event, K.E. went to the hospital. Jamie Parks, a forensic nurse who specializes in treating patients who are victims of assault, was called into the emergency room to evaluate K.E. According to Parks, her duties in forensic nursing included speaking to the patient, offering evidentiary collection, taking photographs, and putting the patient in contact with the appropriate resources, such as law enforcement. Parks later testified K.E. consented to a forensic examination and photographs during her emergency room visit. Those photos were admitted as evidence at the preliminary hearing.

As the case has progressed, K.E. has been an uncooperative witness for the State despite being ordered to appear. K.E. did not appear for the initial preliminary hearing. After she failed to appear, the district court issued an order to appear and show cause. K.E. appeared in response to this order on May 18, 2022. And while she was there, the district court ordered her to appear at the rescheduled preliminary hearing the next month. K.E. did not appear.

2

When K.E. failed to appear at the rescheduled preliminary hearing, the State relied on the testimony of the responding officer and Parks, including the fact Parks took samples for DNA analysis. However, Perry's defense counsel objected to key parts of Parks' testimony during the preliminary hearing as hearsay based on the Confrontation Clause of the Sixth Amendment and K.E.'s absence from the proceeding. In response, the State argued her testimony was admissible under the medical treatment exception to the hearsay rule. The district court agreed and found the statements were admissible under the medical treatment exception, among others.

Defense counsel renewed his objection to the hearsay statements from Parks at the end of the preliminary hearing. Nevertheless, the district court found the State presented sufficient evidence to support a probable cause finding to bind Perry over on all counts for trial.

After the preliminary hearing, the State filed a "Motion to Determine Admissibility of Witness's Statements to Law Enforcement and Medical Staff." In its motion, the State posed a policy argument and contended the Confrontation Clause is not implicated by Parks' testimony about K.E.'s statements because K.E.'s statements were nontestimonial in nature. In response, Perry "renew[ed] the Motion to Dismiss the Preliminary Hearing," which is not in the record on appeal.

On April 13, 2023, the district court held a hearing on the State's motion. Parks again testified and provided some background on her experience and her process for conducting a forensic examination. In addition, Parks testified that all the questions she poses during examinations have a medical purpose and admitted that a patient may seek a forensic examination without alerting law enforcement.

The State renewed its argument, claiming the statements made to medical professionals for the sole purpose of medical treatment, or a dual purpose which includes

treatment, may be admissible because the statements may not be testimonial. In response, defense counsel agued the issue should be addressed before trial and alternatively argued counsel had a right to confront K.E. about her statements to Parks. Interestingly, defense counsel also alleged K.E. sent an email to the prosecutor where she "completely recanted" her story.

The district court found Parks' testimony regarding the statements K.E. made to her during the forensic examination was inadmissible because the testimony implicated the Confrontation Clause. After noting the law permits statements by nurses for a nontestimonial purpose, the district court refused to extend the hearsay exception to admit Parks' testimony, finding, "I can't make that stretch. I just can't under the Sixth Amendment." The district court reasoned it refused to apply the hearsay exception because the State's only proffered evidence came from Parks' hearsay testimony. The district court found the State offered "no other evidence other than a victim's statements to a forensic nurse for everything in the case," and the district court refused to find any "exemption to admissibility here in light of *Crawford* [*v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004),] and [its] progeny because this is the only evidence."

ANALYSIS

This timely interlocutory appeal by the State presents one issue for us to resolve: Did the district court err when it found K.E.'s statements to the forensic nurse were inadmissible as violative of the Confrontation Clause? After establishing its statutory authority for this interlocutory appeal, the State asserts the district court erred because K.E.'s statements to Parks were nontestimonial in nature, an exception to the hearsay rule, and did not implicate the Confrontation Clause. In response, Perry argues the district court did not err because K.E.'s statements to Parks were testimonial and admission of

4

those statements, without the opportunity to cross-examine K.E., would violate his right to confront her under the Confrontation Clause.

*The State preserved this issue for interlocutory appeal.*

"In Kansas, the right to appeal is entirely statutory." *State v. McCroy*, 313 Kan. 531, 534, 486 P.3d 618 (2021). Here, the State has the statutory authority to bring this appeal under K.S.A. 22-3603:

> "When a judge of the district court, prior to the commencement of trial of a criminal action, makes an order . . . suppressing evidence . . . an appeal may be taken by the prosecution from such order if notice of appeal is filed within 14 days after entry of the order."

Our Supreme Court has interpreted K.S.A. 22-3603 to find the prosecution can also appeal from "rulings of a trial court which exclude [S]tate's evidence so as to substantially impair the [S]tate's ability to prosecute the case." *State v. Newman*, 235 Kan. 29, 34, 680 P.2d 257 (1984); see also *State v. Mitchell*, 285 Kan. 1070, 1080, 179 P.3d 394 (2008) (Court found no jurisdiction over State's appeal, holding: "If the exclusion of evidence does not substantially impair the State's ability to prosecute the case, the State cannot raise the issue as an interlocutory appeal.").

Perry does not challenge whether the State can bring this interlocutory appeal under K.S.A. 22-3603, and we agree we have jurisdiction to resolve this appeal as the State's ability to prosecute the case is impaired by the district court's order finding all of Parks' testimony inadmissible at trial. The State's motion to determine admissibility broadly contends all the statements K.E. made to Parks during the forensic examination are admissible. The motion concluded: "All of [K.E.'s] statements were for medical

5

treatment and therefore fall under the hearsay exception for Statements for Medical Treatment."

The State acknowledges it is limited to presenting most of the evidence through Parks because K.E. has refused to appear at any proceeding. The reporting officer who testified at the preliminary hearing could not testify to any of the information K.E. provided him because K.E. did not appear. His testimony was limited to providing the reason for the dispatch, the location of K.E.'s home, and the other people in the home when he arrived. Thus, absent Parks' testimony, the State lacks any evidence identifying Perry or supporting its charges against Perry. And because the absence of Parks' testimony "*may be determinative of the case*," we have jurisdiction to review the State's appeal under K.S.A. 22-3603. See *Newman*, 235 Kan. at 35.

*Not all of the statements made by K.E. to the treating nurse were testimonial.*

When the trial court denies the admission of evidence under the Confrontation Clause of the Sixth Amendment, we exercise de novo review. *State v. Miller,* 293 Kan. 535, 555, 264 P.3d 461 (2011); *State v. Bennington*, 293 Kan. 503, 507, 264 P.3d 440 (2011). Similarly, we apply de novo review when an appellant challenges "the adequacy of the legal basis on which the district court decided to admit or exclude evidence." *State v. Barney*, 39 Kan. App. 2d 540, 545, 185 P.3d 277 (2007).

The Confrontation Clause of the Sixth Amendment provides in all prosecutions the accused "shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the United States Supreme Court found the Confrontation Clause prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Kansas also provides an extra right under the Kansas

6

Constitution Bill of Rights, § 10—the defendant has the right "'to meet the witness face to face.'" *Bennington*, 293 Kan. at 507-08. But if the statements are nontestimonial, the guarantees of the Confrontation Clause are not implicated. 541 U.S. at 68; see *Melendez-Diaz v. Massachusetts*, 557 U. S. 305, 309, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009); *State v. Appleby*, 289 Kan. 1017, 1055, 221 P.3d 525 (2009); *State v. Davis*, 283 Kan. 569, 574-75, 158 P.3d 317 (2006). As a result, "[p]ost-*Crawford*, the threshold question in any Confrontation Clause analysis is whether the hearsay statement at issue is testimonial in nature." *Appleby*, 289 Kan. at 1055.

The *Crawford* Court did not define testimonial statements, but it did define types of statements that may qualify as testimonial:

> "Various formulations of this core class of 'testimonial' statements exist: '*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' . . . 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' [Citations omitted.]" 541 U.S. at 51-52.

Later, our Supreme Court applied the holdings in *Crawford* and its progeny to establish four factors to be considered when determining whether the hearsay statements are testimonial:

> "(1) Would an objective witness reasonably believe such a statement would later be available for use in the prosecution of a crime?
> "(2) Was the statement made to a law enforcement officer or to another government official?

"(3) Was proof of facts potentially relevant to a later prosecution of a crime the primary purpose of the interview when viewed from an objective totality of the circumstances, including circumstances of whether

(a) the declarant was speaking about events as they were actually happening, instead of describing past events;

(b) the statement was made while the declarant was in immediate danger, *i.e.*, during an ongoing emergency;

(c) the statement was made in order to resolve an emergency or simply to learn what had happened in the past; and

(d) the interview was part of a governmental investigation; and

"(4) Was the level of formality of the statement sufficient to make it inherently testimonial; *e.g.*, was the statement made in response to questions, was the statement recorded, was the declarant removed from third parties, or was the interview conducted in a formal setting such as in a governmental building?" *State v. Brown*, 285 Kan. 261, 291, 173 P.3d 612 (2007).

More recently, our Supreme Court disapproved of the *Brown* multifactor test "as the exclusive or all-encompassing template for determining whether a statement made by an absent declarant qualifies as testimonial under the Sixth Amendment." *State v. Williams*, 306 Kan. 175, 197, 392 P.3d 1267 (2017). Because testimonial statements can be "broader than formal statements made to police during an interrogation[,]" the *Williams* court warned against a "purely mechanical application of its factors . . . . Instead, the inquiry should generally seek to identify statements that are by nature substituting for trial testimony." 306 Kan. at 197. The *Williams* court nevertheless went on to apply the factor test to find the statements made by an informant—which identified the defendant and the illegal drug—were testimonial. 306 Kan. at 202.

In *Miller*, our Supreme Court considered whether statements made by a sexual assault victim to medical professionals were testimonial and reviewed several cases from other jurisdictions. The *Miller* court also reviewed more recent Supreme Court decisions and noted: "What seems consistent in nearly all cases is the courts' use of case-specific

analysis of the challenged statements based on the totality of the underlying circumstances to determine the testimonial or nontestimonial nature of the statements." 293 Kan. at 567.

The *Miller* court applied some of the factors from *Brown* to consider whether a sexual assault victim's statements to a sexual assault nurse examiner (SANE) were testimonial and violative of the Confrontation Clause. Notably, when considering whether the nurse was an agent of the State, the *Miller* court opined there "can be two purposes" when a nurse examines a victim and poses questions: "one for medical diagnosis and treatment and the second for collecting evidence for use in a later future criminal prosecution." 293 Kan. at 576. And the court opined a victim's statements to a nurse may transition from nontestimonial to testimonial depending on the circumstances of the case. 293 Kan. at 577. As a result, the *Miller* court directed "trial courts in future cases [to] analyze which statements were made in response to questions posed for each purpose. Often this will require examination of individual questions and responses." 293 Kan. at 576.

This direction from the *Miller* court is relevant to the State's argument and the district court's findings and order, because the State requests one blanket decision for all the statements K.E. made to Parks during the forensic examination. As noted, the State's motion argued "[a]ll of [K.E.'s] statements were for medical treatment." The district court's order "suppressed statements made by K.E., the listed victim, made to medical staff." And when making its findings from the bench, the district court specifically found: "[T]he forensic nurse cannot testify as far as the victim's statements. Any of them, because they go to the entire case." On appeal, the State similarly asks us to "reverse the district court's ruling [and] find the statements are admissible."

The State proffers no argument suggesting some of K.E.'s statements were admissible, while others may have transitioned into testimonial. And based on *Miller*, it

9

seems ill-advised to issue a blanket order finding all of K.E.'s statements to Parks are inadmissible at trial because each challenged statement often "require[s] examination of individual questions and responses." See 293 Kan. at 576. But while the State's all-encompassing argument is not persuasive, the district court erred for the same reason—the district court did not examine each statement and conclude which may be testimonial or nontestimonial.

The *Miller* court examined *Michigan v. Bryant*, 562 U.S. 344, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011), to emphasize a statement may transition from nontestimonial to testimonial. For example, the *Bryant* Court considered the emergency exception to the hearsay rule to find what starts as an emergency may transition into a nonemergency, resulting in some statements being admissible while others are not.

> "As we recognized in *Davis*, 'a conversation which begins as an interrogation to determine the need for emergency assistance' can 'evolve into testimonial statements.' This evolution may occur if, for example, a declarant provides police with information that makes clear that what appeared to be an emergency is not or is no longer an emergency or that what appeared to be a public threat is actually a private dispute. It could also occur if a perpetrator is disarmed, surrenders, is apprehended, or, as in *Davis*, flees with little prospect of posing a threat to the public. Trial courts can determine in the first instance when any transition from nontestimonial to testimonial occurs, and exclude 'the portions of any statement that have become testimonial, as they do, for example, with unduly prejudicial portions of otherwise admissible evidence.' [Citations omitted.]"
> *Bryant*, 562 U.S. at 365-66.

Generally, it appears these issues are raised by a defendant on direct appeal, not by the State on interlocutory appeal. See *Miller*, 293 Kan. at 555. We have found only two cases addressing the Confrontation Clause on interlocutory appeal under K.S.A. 22-3603. See *State v. Myers*, 229 Kan. 168, 171, 625 P.2d 1111 (1981) ("In determining the admissibility of hearsay evidence under one of the exceptions to the hearsay rule, a trial

court must also consider the application of the confrontation clauses . . . ."); *State v. Martinez-Diaz*, 63 Kan. App. 2d 363, 379-80, 528 P.3d 1042 (2023) (finding evidence admissible when defendant had prior opportunity to cross-examine unavailable witness). The *Martinez-Diaz* panel reversed the district court's admissibility holding and remanded "with directions that if [the witness] again refuses to give immunized testimony at Martinez-Diaz' trial, then the district court must, subject to any applicable evidentiary rules Martinez-Diaz invokes, allow use of [the unavailable witness'] prior testimony." 63 Kan. App. 2d at 380.

Unlike *Martinez-Diaz*, we have no clear direction for disposing of the State's claim. Unlike cases that have already proceeded to trial, we do not have the benefit of reviewing actual challenged testimony to determine whether its admittance was error. Instead, we are asked to preemptively decide whether all of the nurse's proposed testimony should be suppressed because it runs afoul of the Confrontation Clause. But again, under *Bryant* and *Miller*, it would appear to be error to do so because portions of Parks' testimony may be nontestimonial, while other testimony may be testimonial.

In *State v. Jones*, 295 Kan. 1050, 1056-57, 288 P.3d 140 (2012), our Supreme Court found Jones' failure to raise a Confrontation Clause claim at trial regarding challenged hearsay testimony prevented the court from addressing the defendant's claim on appeal. Relevant to the State's claim here, the *Jones* court found the victim's hospital visit "accomplished dual purposes" but noted it was "unclear at what point the SANE's activities might have transitioned from medical treatment to law enforcement purposes." 295 Kan. at 1057. Our Supreme Court then concluded it was "handcuffed" without the proper findings below and affirmed the panel's conclusion the nurse's testimony was not testimonial in nature. 295 Kan. at 1057-58; see *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 (2009) (regardless of whether record contains sufficient evidence to make factual findings, that is not role of appellate courts).

The State proffers no argument as to how each of K.E.'s statements to Parks should be analyzed. We believe the instruction from *Miller* controls, and the district court "must analyze which statements were made in response to questions posed for each purpose." 293 Kan. at 576. Our Supreme Court provided a similar instruction in *Bennington*, 293 Kan. at 521.

Given the district court's lack of specific findings and our guiding caselaw, we observe the district court erred by issuing a blanket ruling finding all of K.E.'s statements to Parks were inadmissible. Because Perry has the right to confrontation—meet the witness face to face— we remand the case for the district court to conduct a hearing to determine what statements are testimonial and what statements are nontestimonial in accordance with *Miller*, 293 Kan. at 567. Our remand gives the district court, as the fact-finder, the opportunity to analyze the purpose of each statement K.E. made in response to Parks' questions.

Reversed and remanded with directions.